**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD MARTIN, JOHN**
**D'AMBROSIO and YOLANDA**
**GERVARZES,**

               **Plaintiffs,**

**v.**                                             **Case No:   6:12-cv-1268-Orl-31DAB**

**HALIFAX HEALTHCARE SYSTEMS,**
**INC. and HALIFAX COMMUNITY**
**HEALTH SYSTEMS,**

               **Defendants.**

_____

**ORDER**

This matter comes before the Court without a hearing on the Motion for Summary

Judgment (Doc. 52) filed by the Defendants, Halifax Healthcare Systems, Inc. ("HHSI") and

Halifax Community Health Systems ("HCHS"), the response in opposition (Doc. 65) filed by the

Plaintiffs, and the reply (Doc. 73) filed by the Defendants.

          **I.**       **Background**

The Plaintiffs, all Volusia County residents, are deaf and communicate primarily in

American Sign Language (henceforth, "ASL").   All three (separately) had dealings with Halifax

Hospital Medical Center ("Halifax Hospital"), a Volusia County hospital.   Richard Martin

("Martin") and John D'Ambrosio ("D'Ambrosio") received treatment at Halifax Hospital after a

fall and a heart attack, respectively; Yolanda Gervarzes ("Gervarzes") accompanied her pregnant

daughter to Halifax Hospital for the delivery.   All three contend that the Defendants failed to

provide live sign language interpreters during at least some portions of their stay, in violation of

Title III of the Americans With Disabilities Act (Count I), the Rehabilitation Act (Count II), Title

II of the Americans With Disabilities Act (Count III), and the Florida Civil Rights Act (Count IV).[1]

## II. Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.   Fed.R.Civ.P. 56(c).   Which facts are material depends on the substantive law applicable to the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).   In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."   *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.   Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.   *Id.*   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

---

[1] Count I is asserted only against HHSI; Count III is asserted only against HCHS.

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.   The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### III.   Analysis

#### A.  HHSI

As an initial matter, HHSI contends that it does not own or operate Halifax Hospital and therefore cannot be held liable for any failure of adequate communication with the Plaintiffs.   The Plaintiffs respond by asserting that HHSI "is a recipient of federal financial assistance by virtue of its acceptance of Medicare and Medicaid payments and, therefore, a covered entity under the Rehabilitation Act," and they further assert that the Defendants "jointly own, operate, and/or finance" Halifax Hospital.   (Doc. 65 at 8).   But the Plaintiffs do not point to any record evidence that would support a finding that HHSI (1) receives federal financial assistance or (2) jointly owns, operates, or finances Halifax Hospital.

The Plaintiffs note that HHSI has stated that it is "involved in 'physicians' billing'" and state that "Presumably, such billing services serve to finance Halifax Hospital and its operation through the invoicing and receipt of monies from insurance companies, Medicare, and/or Medicaid."   (Doc. 65 at 8 n.2).   However, no evidence is provided in support of the Plaintiffs' presumption, and no explanation is offered as to how the provision of billing services would lead to liability under the ADA or the Rehabilitation Act.

Finally, the Plaintiffs also assert that HHSI "has previously been a party to, and resolved, similar claims, including claims under the ADA and Rehab Act."   (Doc. 65 at 8 n.2).   Again,

however, the Plaintiffs provide no evidence of HHSI's alleged participation in such claims, and there is no explanation as to how this participation might make HHSI liable in the instant case.

HHSI is entitled to the entry of judgment as to all of the claims asserted against it.

## B.  FCRA

The Florida Civil Rights Act of 1992 (henceforth, the "FCRA") prohibits discrimination at "public accommodations" and "public food service establishments" on the basis of, *inter alia*, physical disability.   Fla. Stat. §§ 509.092, 760.11.   The Defendants argue that they are entitled to summary judgment as to the FCRA claim – found in Count IV – because Halifax Hospital is not a place of public accommodation or a public food service establishment, as those terms are used in the FCRA.   The Plaintiffs agree that hospitals are not places of public accommodation, but argue that if an entity not otherwise covered by the FCRA (such as a hospital) includes a public food service establishment within its premises, the otherwise uncovered entity becomes subject to the FCRA.   (Doc. 65 at 15-17).   It is undisputed that Halifax Hospital has a cafeteria within its premises.

The FCRA's definition of "public accommodations" includes the following: "**Any establishment** which is physically located within the premises of any establishment otherwise covered by this subsection, or **within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment**."   Fla. Stat. § 760.02(11)(d) (emphasis added).   The Defendants argue that there is no evidence that Halifax Hospital holds itself out as serving patrons of its onsite cafeteria.   In addition, the Defendants point out that the statutory definition of "public food service establishment," found at Fla. Stat. § 509.013(5)(b)(4) excludes eating places that are maintained by a facility certified or licensed and regulated by the Agency for Health Care Administration

(henceforth, the "AHCA"), which licenses Halifax Hospital.   (Doc. 52 at 21).   In response, the Plaintiffs cite to cases under federal law in which the existence of hospital cafeterias turned hospitals into places of public accommodation, but fail to point to any evidence supporting the same result in this case or offer any argument that would overcome the exclusion, under Florida law, for eateries operated by AHCA-licensed entities.   Summary judgment will be entered in favor of the Defendants as to Count IV.

### C.  The ADA and the Rehabilitation Act

To prevail under Title II of the ADA, a plaintiff must demonstrate: (1) that he or she is a qualified individual with a disability; (2) that he or she was excluded from participation in or ... denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated [against] by such entity; and (3) that this exclusion, denial or discrimination was done because of the disability."  *See. e.g., Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir.2001). To prevail under Title III of the ADA, a plaintiff "generally has the burden of proving: (1) that [he] is an individual with a disability; (2) that defendant is a place of public accommodation; (3) that defendant denied [him] full and equal enjoyment of the goods, services, facilities or privileges offered by defendant (4) on the basis of [his] disability."  *Schiavo ex rel Schindler v. Schiavo*, 358 F.Supp.2d 1161, 1165 (M.D.Fla.2005).   To recover compensatory damages under the Rehabilitation Act, a plaintiff must demonstrate "intentional discrimination or bad faith."  *Wood v. President & Trs. of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir.1992). In other words, "good faith attempts to pursue legitimate ends are not sufficient to support an award of compensatory damages under [the Rehabilitation Act]."  *Id.*  With the exception of its federal funding requirement, the Rehabilitation Act uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable.  *Badillo v. Thorpe*, 158

Fed. Appx. 208, 214 (11th Cir. 2005) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 & n. 2 (11th Cir.2000)).

There is no dispute in this case that the Plaintiffs are qualified individuals with a disability.   Setting aside for the moment the question of whether either Defendant might qualify as a "place of public accommodation," the Plaintiffs must demonstrate that, on the basis of their disability, they were (1) excluded from participation in -- or denied the benefits of -- the services, programs, or activities at Halifax Hospital or otherwise discriminated against or (2) denied the full and equal enjoyment of the goods, services, facilities or privileges offered by the Defendants. The Defendants contend that there is no evidence to support such allegations.   Upon review, the Court agrees with the Defendants.

All three Plaintiffs are completely deaf, and the primary mode of communication for each of them is American Sign Language.   (Doc. 62 at 3).   Each Plaintiff requested that Halifax Hospital provide a live interpreter to assist their communication with hospital staff.   (Doc. 62 at 3).   Martin, who was brought in for treatment of what turned out to be a relatively minor head injury, was never provided a live interpreter.   (Doc. 62 at 7).   Gervarzes, whose pregnant daughter was at Halifax Hospital to deliver her baby, was provided an interpreter on some occasions but testified that ""[o]n many occasions, no interpreter was present".   (Doc. 66-3 at 2). D'Ambrosio was brought into the emergency room in the throes of a serious heart attack.   As with Gervarzes, D'Ambrosio was provided with an interpreter on some occasions, but on others – including when D'Ambrosio first arrived, and had to undergo an emergency cardiac catheterization – no interpreter was present.   (Doc. 66-1 at 2).   On those occasions when no interpreter was present, hospital personnel communicated with the Plaintiffs by other means,

including written notes, gestures, and in some instances "Lifelinks," a video relay interpreting service.

The Plaintiffs argue that "anything aside from an ASL interpreter was inappropriate for treatment or a hospitalization involving complicated medical procedures and terminology."   (Doc. 62 at 14).   However, the Plaintiffs have not cited, and this Court has not uncovered, any precedent obligating a hospital to provide a live ASL interpreter on every occasion when medical personnel wish to communicate with a deaf person.   Turning to the specifics of this case, the Plaintiffs have not provided any evidence from which a reasonable jury might conclude that any one of them was excluded from participating in any service, program, or activity, or denied the benefits thereof, or otherwise discriminated against.   For instance, there is no evidence that the alternative methods of communication employed by Halifax Hospital were insufficient to allow any Plaintiff to understand their circumstances and treatment as well as they would have understood them if a live ASL interpreter had been utilized.   Similarly, there is no testimony or other evidence that any Plaintiff would have reached a different decision about treatment options or reached a more beneficial result if the medical providers had only communicated via a live ASL interpreter.

The Plaintiffs have failed to raise a genuine issue of material fact as to any violation of the ADA or the Rehabilitation Act, and Defendants are therefore entitled to summary judgment on those counts.

## IV.   Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 55) is **GRANTED**, as set forth above.   The Clerk is **DIRECTED** to enter judgment in favor of the Defendants and against the Plaintiffs on all counts, and to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 11, 2014.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party